## BRADFORD v. BISHOP.

1. The omission by an indorsee, for nearly two years, to sue out an alias execution upon a judgment obtained by him against the maker, the sheriff having failed to return the original execution, in the absence of any excuse for such neglect, discharges the indorser from liability.

Writ of Error to the Circuit Court of Coosa. Before the Hon. Geo. Goldthwaite.

The defendant in error, brought assumpsit against the the plaintiff, as indorser of a promissory note, made by John W. Bishop to the plaintiff, Bradford, and by him indorsed to the defendant.

The declaration avers the making of the note by John W. Bishop to Bradford, and that he on the same day indorsed it to the defendant in error, for a valuable consideration. That suit was brought against the maker to the January term, 1839, of the county court of Talladega county, which was the county of the residence of the maker, and which was the first court to which suit could be brought after the note fell due. The declaration alledges, that the writ was placed in

the hands of the sheriff on the 15th January, 1839, and was returned by him, not found; and thereupon the suit in the county court was dismissed, and suit brought against the maker to the circuit court of Talladega county, which was the first court to which suit could be brought, after the county court held in January, 1839. It is also averred, that at the November term, 1839, of the circuit court of Talladega, the defendant in error recovered a judgment against the maker for the amount of the note, less the amount of credits indorsed on it, on which judgment execution issued on the 13th March, 1840, and placed in the hands of the sheriff of Talladega, who failed to return said writ, and also failed to execute the same. The declaration then avers, that on the 11th day of March, 1842, an alias execution was sued out on said judgment, and placed in the hands of the sheriff of Talladega, which was returned by the sheriff, " there is no goods and chattels, lands or tenements, to be found in my county, to make the money on this *fi. fa.*" By means whereof the said Bradford became liable, &c.

The defendant filed several pleas: 1. Non-assumpsit. 2. Payment. 3. Set off. 4. That the defendant was not liable on said indorsement, because the judgment described in the declaration had been assigned, and transferred by the plaintiff, Lewis Bishop, to Simeon Douglass, and Wm. McLane, for a *bona fide* and valuable consideration. 5. That said judgment was satisfied as to the plaintiff, by the transfer of it to Douglass and McLane.

The plaintiff demurred to the 4th and 5th pleas, and the demurrer was sustained by the court; and took issue on the 1st, 2d, and 3d pleas. Upon the trial, the plaintiff read the note, and produced the transcript of the records of the county court of Talladega, showing the issuing of the writ, the return of not found, and the dismissal of the suit as stated in the declaration, and also the transcript of the judgment against the maker in the circuit court of Talladega, the issuance of the executions, and the return as alledged. There was no other evidence of the insolvency of the maker, than that afforded by the judgment and return on the execution.

The defendant below moved the court to charge the jury,

Bradford v. Bishop.

1. That the plaintiff's right to recover depended on the insolvency of the maker.   This charge the court gave.

2. That it was incumbent on the plaintiff to prove this insolvency, after the recovery of the judgment against the maker; which was also given.

3. That the execution and return thereon, as shown by the record, is not evidence of the maker's insolvency; which the court refused.

4. That the return on the execution, which issued the 11th March, 1842, was not evidence of the insolvency of the maker, anterior to that date; which was refused.

The defendant then moved the court to exclude from the jury as evidence, the transcript of the record of the suit against the maker, as it did not tend to prove the insolvency of the maker of the note; this motion was refused, and the plaintiff in error excepted.

The errors assigned are—1. The sustaining the demurrer to the 4th and 5th pleas.

2. The ruling of the court, as shown in the bill of exceptions.

MORRIS and TOUL, for plaintiff in error.

1. The statute, Clay's Dig. 383, § 12 and 16, is a substitute for demand and notice required by the law merchant. Pearson v. Mitchell, 2 Ala. 736; Reese v. White, 2 Ib. 306.

2. Suit to the first court, does not of itself fix the liability of the indorser.   The drawer must be prosecuted with diligence to insolvency, and the sheriff's return of "no property" is evidence of the fact of insolvency.   The statute does not relieve the party from diligence. · Clay's Dig. 383, § 12, 16; Hogan v. Vance, 2 Bibb, 35; Duncan v. Littell, 2 Ib. 424; Reese v. White, 2 Ala. 306.

3. If there be unreasonable delay, and no excuse, the indorser is discharged; such must be the spirit of the law; if a party may delay one year, he may delay ten; how can the court draw the line.

4. Who can say but the first execution, not returned or accounted for, has been satisfied, or that J. W. Bishop, the drawer, was then amply solvent.

5. The execution and return should have been excluded. The 4th charge should have been given.

6. The declaration is bad; it contains no averment of the insolvency of Bishop, nor excuse for delay until 1842, in procuring return of no property.

7. The assignment of the judgment, as shown in the record, is a satisfaction as to Lewis Bishop. The stipulations shown in the assignment are independent, the title in the judgment thereby passed unconditionally from Bishop. If Bishop has been paid, he should not be permitted to have another satisfaction.

L. E. PARSONS, contra.

1. The return of "no property" by the sheriff is sufficient, if the other requisites of the statute have been complied with. Reese v. White, 2 Ala. 308; Goodall v. Stuart, 2 H. & M. 105; Mackie v. Davis, 2 Wash. 233. And when made is conclusive to that point. 4 Ala. 536.

2. If the money could have been made out of the maker of the note, during the interim between the return day of the execution issued the 13th of March, 1840, and the one issued March 11, 1842, which was returned "no property," it could have been shown in defence by Bradford, and he could have done it by Bishop himself, if such been the fact. (Bishop the maker.)

3. The assignment of the judgment is no satisfaction of it; and the suit is properly brought in the name of Lewis Bishop, the indorsee. Brown v. Foster, 4 Ala. 282; Sawyer v. Bradford, 6 Ala. 577.

4. Was the execution void? The judgment entry states, "this judgment is to be credited," &c. This leaves the exact amount for which the execution issued. There is nothing unjust in the use of the execution. At most, it is an irregularity of which Bradford cannot complain. A greater amount was not due, and could not have been collected. It was quite as effectual as a larger one, to ascertain Bishop's insolvency. If an execution is not void, it possesses all the vitality, as to strangers, which belongs to one regular in every particular.

5. The suit to the first term takes the place of demand

and protest. After demand and protest, the holder is not bound to sue, except within time to save the bar of the statute. So after judgment, the lapse of a term, or in this case, three terms does not release the indorser.

DARGAN, J.—By the rules of the law merchant, in order to fix the liability of an indorser of a promissory note, it was necessary to make demand of payment of the maker, and upon his refusal to pay, to give notice to the indorser; these things being done, the liability of the indorser was fixed, and he might be forthwith sued, without taking any further proceedings against the maker.

Our statute has altered the law merchant in this respect, and in order to charge the indorser of a promissory note, not negotiable in bank, the indorsee must sue the maker in the county of his residence, to the first term of any court to which the suit can be properly brought, after the note falls due ; or if it be indorsed after maturity, then to the first court after such indorsement is made, and upon the recovery of a judgment, and the return of no property made by the sheriff on the execution issued thereon, then he can sue the indorser.

The liability of an indorser is not fixed by commencing suit, and recovering judgment ; but the return of the sheriff, "no property," on the execution issued on the judgment, is a pre-requisite to the indorser's right of action. Reese v. White, 2 Ala. Rep. 306. It is true, that the law requires no other evidence of the insolvency of the maker, than the commencement of the suit to the first term to which it can be properly brought, the recovery of judgment, then the issuance of execution, and the return of "no property" by the sheriff. But in our opinion, due diligence should be used, not only to recover the judgment, but after it is recovered, to have execution issued, and the return of "no property" made by the proper officer. The statute does not prescribe at what time execution shall issue after the rendition of the judgment, but we think the spirit and intent of the act is, that the indorsee shall use ordinary diligence in prosecuting the note to judgment, after the suit is commenced ; and after judgment is rendered, in procuring the return of no property on the

66

execution; and that unreasonable delay, or negligence, in prosecuting the suit, or having the execution returned "no property," will discharge the indorser. For until this return is made, the liability of the indorser is not fixed. And although the indorsee may use due diligence in performing the first pre-requisite to the liability of the indorser, yet this will not excuse negligence, or *laches*, in performing the other. The judgment was rendered in due time, and the original *fi. fa.* duly issued, but it never was returned by the sheriff. Yet the defendant in error, under our statute, could have issued an alias, notwithstanding the original never was returned. Spence v. Campbell, 4 Ala. 543; The Bank at Montgomery v. Curry, at the last term. The defendant in error, however, neglected to have an alias issued for nearly two years after the term of the court to which the original was returnable; during all this time the liability of the indorser was conditional; and if the indorsee can neglect to sue out an execution for two years, and then do it, and fix the liability of the indorser, may he not at almost any distant period of time? We think such a construction would be opposed to the intention and spirit of the act. The act does not prescribe the degree of diligence the indorsee shall use, in prosecuting the suit after it is instituted; nor when the judgment shall be rendered, or the execution returned "no property." We think this was properly omitted by the legislature, for any fixed rule prescribing when the judgment should be rendered on the *fi. fa.* and returned *no property*, might frequently discharge an indorser, without laches, or neglect on the part of the indorsee, But as the statute does not prescribe the diligence to be observed by the indorsee, after suit brought, he is therefore bound to ordinary diligence.

We therefore hold, that the omission of the defendant in error, to sue out an alias execution for nearly two years after the term to which the original was returnable, in the absence of any excuse for such neglect, discharges the indorser from liability. In this conclusion we are sustained by the authorities in the cases of Bishop v. Beazly, 6 Black. 127; 1 Bibb, 542; 4 Peters' Sup. C. Rep. 366; 6 Leigh's R. 386.

It has also been contended, that the failure of the sheriff to return the execution, whereby he was made liable to the

plaintiff for the amount thereof, discharges the indorser. We should be inclined to differ from the plaintiff's counsel upon this question, but as the judgment must be reversed on the first question, it is not necessary to examine the other.

Let the judgment be reversed and the cause remanded.